UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.:

| | |
|---|---|
| MEGAN C. IRWIN<br><br>   and<br><br>THOMAS L. IRWIN, INDIVIDUALLY AND AS FATHER AND NEXT FRIEND OF MINOR CHILDREN MOLLY IRWIN, MICHAEL IRWIN AND THOMAS IRWIN,<br><br>               Plaintiffs,<br><br>v.<br><br>ECLECTIC DINING, INC., d/b/a<br>ATLANTICA'S OLDE SALT HOUSE<br><br>               Defendants. | **PLAINTIFFS'<br>COMPLAINT** |

## Jurisdiction

Jurisdiction is based on so-called diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1), with the amount in controversy in excess of Seventy-Five Thousand ($75,000.00) Dollars.

## Venue

Venue is based upon 28 USC 1391(b)(1) and (2).

## The Parties

1.    Plaintiff Megan Irwin ("Plaintiff") is an individual residing at 51 E. 78th Street, Apartment 1C, New York, New York, and is a citizen of the State of New York.

2.    Plaintiff Thomas L. Irwin ("Plaintiff Mr. Irwin") is an individual residing  at 51 E. 78th Street, Apartment 1C, New York, New York, and is a citizen of the State of New York.

3.    Plaintiff Mr. Irwin is the Father and Next Friend of minor children Molly Irwin, Michael Irwin and Thomas Irwin (collectively, "the minor children"), all of which minor children are citizens of the State of

New York, are the children of Plaintiff and Plaintiff Mr. Irwin, and all of whom reside together at 51 E. 78th Street, Apartment 1C, New York, New York.

4.     At all times relevant to the Complaint, Plaintiff was and is married to Plaintiff Mr. Irwin.

5.     Defendant Eclectic Dining, Inc. (Defendant") is a Massachusetts corporation with a principal place of business at 44 Border Street, Cohasset, County of Norfolk, Massachusetts, is a citizen of the Commonwealth of Massachusetts, and does business as Atlantica's Olde Salt House.

<u>Facts Alleged</u>

6.     At all times relevant to the Complaint, Defendant operated a restaurant at 40 Border Street, Cohasset, Massachusetts known as Atlantica's Olde Salt House ("the restaurant").

7.     At all times relevant to the Complaint, Defendant owed a duty of due care to its patrons, including Plaintiff.

8.     At all times relevant to the Complaint, the restaurant contained an outdoor deck upon which Defendant had placed round tables ("the tables").

9.     At all times relevant to the Complaint, it was the custom and practice of Defendant to seat patrons of the restaurant at chairs located around the tables.

10.     The tables contained a circular hole at their center, through which Defendant sometimes placed poles that were attached to patio umbrellas.

11.     When Defendant placed patio umbrella poles through the aforementioned holes in the tables, it was Defendant's custom and practice to place the bottom portion of said poles into metal umbrella stands.

12.     Each of the aforementioned umbrella stands had hollow metal pipes welded or otherwise attached to the top of the stand, and were designed so that an umbrella pole could be slid down into the pipe.

13.     The aforementioned umbrella stands were intended by

Defendant to securely hold the aforementioned umbrella poles in place, and to prevent the wind from blowing the umbrella poles and umbrellas attached to them out of their location in the center of the tables.

14.    The aforementioned umbrella stands were designed to securely hold the aforementioned umbrella poles in place, and to prevent the wind from blowing the umbrella poles and umbrellas attached to them out of their location in the center of the tables.

15.    Prior to August 5, 2012, Defendant knew or should have known that, should wind cause an umbrella pole and attached umbrella to come loose and blow out of an umbrella stand at the restaurant, said umbrella pole and/or attached umbrella could pose a risk of serious injury to patrons of the restaurant.

16.    Prior to August 5, 2012, Defendant knew that, on at least two occasions, wind had caused an umbrella pole and attached umbrella to come loose and blow out of its umbrella stand at the restaurant.

17.    Prior to August 5, 2012, Defendant knew that, on at least one occasion, wind had caused an umbrella pole and attached umbrella to come loose and blow out of an umbrella stand at the restaurant, and to thereby cause injury to a patron of the restaurant.

18.    On August 5, 2012, Plaintiff and her minor child Thomas Irwin, along with other of Plaintiff's relatives ("the luncheon group"), presented at the restaurant for the purpose of having lunch, and the luncheon group was seated by Defendant at one of the tables ("the table").

19.    Prior to the luncheon group being seated as aforesaid, Defendant had placed an umbrella pole ("the umbrella pole"), with patio umbrella attached, through the circular hole in the center of the table, and into the metal pipe of an umbrella stand ("the umbrella stand").

20.    The metal pipe of the umbrella stand had been designed to have, and did have on August 5, 2012, two holes in the metal pipe, one above the other.

21.    The umbrella stand was designed such that a metal screw, with a knob on the outside end, would  be screwed into each of the aforementioned holes in the umbrella stand's metal pipe for the purpose of securing umbrella poles such as the umbrella pole to the umbrella stand.

22.    At the time the luncheon party was seated as aforesaid, and at all times relevant to this Complaint, only one screw had been partially

screwed into one of the aforementioned holes in the metal pipe of the umbrella stand.

23.   At the time the luncheon party was seated as aforesaid, and at all times relevant to this Complaint, one of the aforementioned holes in the metal pipe of the umbrella stand had no screw inserted or otherwise screwed into it.

24.   At the time the luncheon party was seated as aforesaid, and at all times relevant to this Complaint, the one screw in the one hole of the umbrella stand:

    a.    was in a rusted condition;

    b.    was missing the knob that, at the time Defendant purchased the umbrella stand, had been attached to the outside end of the screw; and,

    c.    had not been screwed into the pipe of the umbrella stand reasonably and sufficiently to hold the umbrella pole securely within the pipe of the umbrella stand in the presence of wind speeds that were foreseeable on August 5, 2012.

25.   At approximately 1:00 pm on August 5, 2012, a foreseeable wind, at a speed that is classified internationally as no more if not less than a "gentle breeze", blew across the restaurant's outdoor patio.

26.   The aforementioned wind caused the umbrella pole and attached umbrella to pull up and out of the umbrella stand to which it had not been reasonably and adequately secured by Defendant, and to hover for a moment over the table.

27.   The umbrella pole then came downward with great force, the end of the pole striking Plaintiff on her head, continuing downwards, and then striking the minor child Thomas Irwin who had been sitting on his mother's lap.

28.   The umbrella pole striking Plaintiff as aforesaid was a direct and proximate result of Defendant's failure to reasonably secure the umbrella pole to the umbrella stand as aforesaid.

## COUNT I

29.   Plaintiff reaffirms and realleges paragraphs 1 through 28 as if affirmed and alleged herein.

30.   Defendant's aforementioned failure to reasonably secure the

umbrella pole to the umbrella stand such that it was caused to come loose as aforesaid, constitutes negligence.

31.    As a direct and proximate result of the negligence of Defendant as aforesaid, Plaintiff was caused to suffer serious and permanent injury, to incur and continue to incur medical expenses, to sustain and to continue to sustain a loss of earning capacity, and to suffer and to continue to suffer great pain of body and mind.

**WHEREFORE, PLAINTIFF MEGAN C.IRWIN DEMANDS JUDGMENT AGAINST DEFENDANT ECLECTIC DINING, INC., d/b/a ATLANTICA'S OLDE SALT HOUSE IN THE SUM OF TEN MILLION ($10,000,000.00) DOLLARS, PLUS INTEREST AND COSTS**

## COUNT II

32.    Plaintiff Mr. Irwin reaffirms and realleges paragraphs 1 though 31 of COUNT I as if specifically alleged and affirmed herein.

33.    As a direct and proximate result of the negligence of Defendant and resulting injury to Plaintiff as aforesaid, Plaintiff Mr. Irwin has suffered and continues to suffer a loss of consortium, including a loss or interference with society, comfort, advice, guidance, companionship, and the marital relationship.

**WHEREFORE, PLAINTIFF THOMAS L. IRWIN DEMANDS JUDGMENT AGAINST DEFENDANT ECLECTIC DINING, INC., d/b/a ATLANTICA'S OLDE SALT HOUSE IN THE SUM OF THREE MILLION $3,000,000.00) DOLLARS, PLUS INTEREST AND COSTS**

## COUNT III

34.    Plaintiff Mr. Irwin reaffirms and realleges paragraphs 1 though 31 of COUNT I as if specifically alleged and affirmed herein.

35.    As a direct and proximate result of the negligence of Defendant and resulting injury to Plaintiff as aforesaid, the minor children have suffered and continue to suffer a loss of parental consortium, including a loss or interference with comfort, advice, guidance, and companionship.

**WHEREFORE, PLAINTIFF THOMAS L. IRWIN, AS FATHER AND NEXT FRIEND OF MINOR CHILDREN MICHAEL IRWIN, MOLLY IRWIN AND THOMAS IRWIN, DEMANDS JUDGMENT AGAINST DEFENDANT**

**ECLECTIC DINING, INC., d/b/a ATLANTICA'S OLDE SALT HOUSE IN THE SUM OF ONE MILLION ($1,000,000.00) DOLLARS  FOR EACH SUCH MINOR CHILD, PLUS INTEREST AND COSTS**

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL COUNTS**

The Plaintiffs,
By their attorneys,

Scott E. Charnas, Esq., BBO# 081240
Charnas Law Firm, P.C.
66 Long Wharf
Boston, MA 02114
Tel:  617-557-4700
Fax: 617-557-9199
Email: scharnas@charnaslawfirm.com

Dated: April 21, 2013