UNITED STATES DISTICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MEGAN C. IRWIN AND THOMAS L. IRWIN, INDIVIDUALLY AND AS FATHER AND NEXT FRIEND OF MINOR CHILDREN M.I.1, M.I.2., AND T.I.,<br><br>Plaintiffs,<br><br>v.<br><br>ECLECTIC DINING, INC., d/b/a ATLANTICA'S OLDE SALE HOUSE,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*  Civil Action No. 13-cv-10974-ADB<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

Memorandum and Order

January 5, 2016

D.J. BURROUGHS

## I. INTRODUCTION

On August 5, 2012, Plaintiff Megan C. Irwin ("Ms. Irwin") was seated at the outdoor patio of Atlantica's Olde Salt House, a restaurant in Cohasset, Massachusetts owned by Defendant Eclectic Dining, Inc. ("Eclectic Dining"), when a gust of wind caused the umbrella at her table to blow out of its stand and strike her in the face. In April 2013, Ms. Irwin and her husband Thomas L. Irwin, individually and as father and next friend of their three minor children, (collectively, the "Plaintiffs") initiated this action against Eclectic Dining, alleging that Eclectic Dining's negligence caused injury to Ms. Irwin and a loss of consortium to her husband and their three children.

On October 13, 2015, following a 10-day trial, a jury found Eclectic Dining to have been negligent in connection with the umbrella incident and awarded Ms. Irwin $30,000 in damages.

The jury determined that Eclectic Dining's negligence was not a proximate cause of any loss of consortium to Megan Irwin's three children, and therefore did not award the children any damages.[1]

Presently before the Court is Plaintiffs' Motion for a New Trial on Damages, pursuant to Fed. R. Civ. P. 59(a)(1)(A). [ECF No. 6]. Plaintiffs contend that the jury's verdict on damages was against the great weight of the evidence and, if allowed to stand, would represent a clear miscarriage of justice. Plaintiffs filed their motion on November 3, 2015. Defendant responded on November 17, 2015 [ECF No. 108] and Plaintiffs filed a reply on November 23, 2015 [ECF No. 111]. For the reasons stated herein, Plaintiffs' Motion for a New Trial on Damages is denied.

## II. LEGAL STANDARD

Under Fed. R. Civ. P. 59, following a jury trial, a court may grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).[2] The trial court may order a new trial if "the verdict is against the clear weight of the evidence, is based upon evidence that is false, or resulted from some trial error and amounts to a clear miscarriage of justice." Payton v. Abbott Labs, 780 F.2d 147, 152 (1st Cir. 1985). "[A] district court wields broad legal authority when considering a motion for a new trial," but it cannot "displace a jury's verdict merely because [it] disagrees with it or because a contrary verdict may have been equally . . . supportable." Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009) (internal citations and quotations omitted). Absent an error of law, a judge should

---

[1] The Plaintiffs dropped the spousal consortium count on the eve of trial.
[2] "Federal law governs the issue of whether to order a remittitur or a new trial on damages in a diversity case." Brayman v. 99 W., Inc., 116 F. Supp. 2d 225, 230 (D. Mass. 2000) aff'd, 26 F. App'x 24 (1st Cir. 2002).

only set aside a jury verdict if "it is quite clear that the jury has reached a seriously erroneous result." Milone v. Moceri Family, Inc., 847 F.2d 35, 37-38 (1st Cir. 1988) (quotations omitted).

Inadequate damages can constitute a sufficient reason for a new trial under Fed. R. Civ. P. 59. Phav v. Trueblood, Inc., 915 F.2d 764, 766 (1st Cir. 1990). However, where the sufficiency of a jury's award of damages is contested in a personal injury case, the movant "bears a particularly heavy burden." Milone, 847 F.2d at 37; see also Gil de Rebollo v. Miami Heat Ass'ns, Inc., 137 F.3d 56, 63 (1st Cir. 1998) ("[I]t is comparatively more difficult to justify overturning a jury's verdict where the only evidence that something has gone awry is an allegedly insufficient damages award."). A motion for a new trial should not be granted if, "after scanning the evidence in the light most congenial to the nonmovant—the verdict does not exceed or fall below 'any rational appraisal or estimate of the damages that could be based on the evidence before the jury.'" Milone, 847 F.2d at 37-38 (quoting Segal v. Gilbert Color Sys., 746 F.2d 78, 81 (1st Cir. 1984)).

### III.  DISCUSSION

Over the course of the 10-day trial, Plaintiffs called 13 witnesses, nine of whom offered testimony related to Plaintiffs' alleged damages. The witnesses included Ms. Irwin, her mother, her husband, her former work supervisor, and several medical experts. Plaintiffs also introduced into evidence the medical records of Ms. Irwin's numerous treating physicians. Eclectic Dining called one witness, Dr. Barry Gordon, a neurologist who served as the Defendant's medical expert.

Broadly speaking, the Plaintiffs' damages theory was that the umbrella incident caused mild traumatic brain injury, which left Ms. Irwin unable to return to her previous employment or take care of her children, family and home in the way that she had before, and limited her ability

to live and enjoy the life she lived prior to the injury. Plaintiffs alleged that these injuries were permanent and that, as a result, Ms. Irwin's children were suffering a permanent loss of parental consortium, Ms. Irwin had significant lost wages, and she had incurred and would continue to incur expenses for medical and other related treatments. The Defendant contended that, at worst, Ms. Irwin had suffered a concussion, the symptoms of which could be reasonably expected to last no more than three-to-four months. Defendant further argued that many of the symptoms and limitations Ms. Irwin attributed to the incident pre-dated it or were attributable to the stress and unhappiness in her life caused by a troubled marriage, a sick child, and the demands of being a working mother with three young children and some preexisting medical issues.

At the conclusion of the trial, the Court instructed the jury that if they found by a preponderance of the evidence that Eclectic Dining was negligent, and that Eclectic Dining's negligence caused injury to Ms. Irwin, they should award her damages in such amount as would provide full and fair compensation to her for any injury caused by the negligence. The Court further instructed the jury that in determining the amount to award Ms. Irwin, they should consider three types of damages: medical care expenses, pain and suffering, and lost earning capacity.

Plaintiffs contend that the jury's $30,000 award was inadequate and against the great weight of the evidence. According to Plaintiffs, the "overwhelming weight of the evidence" presented at trial supports a finding that the umbrella incident caused Ms. Irwin to incur mild traumatic brain injury, and that the $30,000 award does not adequately compensate her for lost wages and the significant, life-altering symptoms she continues to suffer as a result. [ECF No. 111, at 3]. Defendants counter that the damages award was consistent with their theory of the case; namely, that Ms. Irwin did not sustain permanent appreciable structural brain damage as a

result of the incident, that many of her symptoms pre-existed the umbrella incident, and that her current lifestyle is inconsistent with the symptoms she claims to suffer. [ECF No. 108 at 2].

Having considered the evidence in the light most favorable to the Defendant, the Court concludes that the jury did not reach a "seriously erroneous result" that requires a new trial. The opposing parties presented two divergent damages theories at trial. The jury heard and saw evidence that Ms. Irwin sustained a mild traumatic brain injury that resulted in the significant ongoing debilitating symptoms she allegedly continues to suffer. It also heard and saw evidence that suggested Ms. Irwin sustained a less severe injury that would have caused symptoms for up to three-to-four months and that challenged the veracity of Ms. Irwin's subjective complaints of ongoing debilitating post-concussion symptoms. As instructed at trial, the jury, as the ultimate arbiter of the facts, was free to believe or disbelieve the testimony of any witness, including that of any or all of the expert witnesses. Consistent with the evidence in the case and these instructions, it was not unreasonable for the jury to find that Ms. Irwin's injuries were not as severe as she claimed, and accordingly, to award her damages significantly lower than she requested and more in line with an injury of limited duration, rather than a lifelong disability.

Plaintiffs now complain that the award was the result of "socioeconomic class prejudice that was engendered by the defense against the Irwin Family," [ECF No. 111, at 4] and that the only explanation for the low award was the "pervasive bias against plaintiffs that was endangered by the defense," by making "Plaintiff's Upper East Side address, and upscale vacation locations, a theme of the trial." [ECF No. 107, at 5]. At trial, the Defendant properly and largely without objection presented substantial evidence of Ms. Irwin's activities subsequent to the umbrella incident in an effort to show that her limitations were not as severe as the Plaintiffs were claiming. This included evidence of Ms. Irwin's vacations and daily activities.

5

Given the subjective nature of Ms. Irwin's complaints—such as fatigue, dizziness, and anxiety—evidence of Ms. Irwin's conduct and activity level following the incident was appropriately before the jury and relevant to the calculation of damages. The Court also does not find that the Defendant over-emphasized this evidence at trial or that such evidence was pervasive enough to bias the jury and thereby inappropriately prejudice the Plaintiffs.

In addition, Plaintiffs contend that Defendant's sole medical expert, Dr. Barry Gordon, who testified that Ms. Irwin suffered no permanent appreciable structural brain damage, cannot be credited. According to Plaintiffs, his testimony was internally inconsistent and contradicted by their own medical experts. [ECF No. 111, at 3]. The credibility of both parties' often conflicting expert testimony was an issue at trial. "It is the jury's task, not . . . the trial court['s], to resolve conflicts in the testimony." Alves v. Daly, No. CV 12-10935-MLW, 2015 WL 4873563, at *2 (D. Mass. Aug. 13, 2015) (citation omitted). Plaintiffs' complaints about Dr. Gordon's testimony do not persuade the Court to inject itself into the fact-finding role properly reserved for the jury. Plaintiffs have not called into question Dr. Gordon's qualifications[3] or discredited his testimony in a way that requires the Court to order a new trial. See Coffran v. Hitchcock Clinic, Inc., 683 F.2d 5, 11 (1st Cir. 1982) ("In the absence of special circumstances . . . such as a vast disparity in qualifications or the presence of strong impeaching factors, we do not think it can be said that a verdict merely crediting one witness over one other witness is against the clear weight of the evidence."). This is particularly true given the subjective nature of most of Ms. Irwin's symptoms.

As the First Circuit has noted, where the sufficiency of a jury's award of damages is contested in a personal injury case, the movant "bears a particularly heavy burden." Milone, 847

---

[3] Dr. Gordon is a professor at the Johns Hopkins School of Medicine.

F.2d at 37. Plaintiffs have not met this burden. The damages awarded do not represent a "clear miscarriage of justice" requiring a new trial, nor is the damage amount "against the great weight of evidence."

### IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for a New Trial on Damages is denied.

**So Ordered.**

Dated: January 5, 2016

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT COURT JUDGE
